## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 884 | **DATE** | 4/15/2003 |
| **CASE TITLE** | Katherine Albers, James Albers vs. Eli Lilly & Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. There is no genuine issue of material fact as to the untimeliness of this lawsuit in the sense taught by the District of Columbia jurisprudence to which this Court must look on that subject. Lilly is therefore entitled to a judgment as a matter of law. Lilly's motion is granted on limitations grounds - - and because one strike suffices for this purpose, both Albers' Complaint and this action are dismissed. (14-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | APR 17 2003 | |
| | Notified counsel by telephone. | | date docketed | 26 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 4/16/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

U.S. DISTRICT COURT CLERK

03 APR 16 PH 2: 09

KATHERINE M. ALBERS and )
JAMES G. ALBERS, )
)
    Plaintiffs, )
)
v. )  No. 02 C 884
)
ELI LILLY AND COMPANY, )
)
    Defendant. )

FILED

APR 1 7 2003

## MEMORANDUM OPINION AND ORDER

  Katherine and James Albers[1] originally filed their six-count
Complaint against Eli Lilly and Company ("Lilly") in the United
States District Court for the District of Columbia, advancing a
number of claims that stemmed from the ingestion of diethyl-
stilbestrol ("DES") by Katherine's mother Mary Murphy while she
was pregnant with Katherine some 48 years ago.  By mutual consent
the action was then transferred to this judicial district, where
it was assigned at random to this Court's calendar.  Because the
District of Columbia treats statute of limitations issues as
procedural, and because the procedural law of the transferor
forum continues to apply after transfer, the parties have also
agreed that this Court should look to District of Columbia law on
that subject.

  At this point Lilly has moved for summary judgment under

---

  [1]  For convenience, those husband-and-wife plaintiffs will
be referred to individually by their first names and collectively
as "Albers."

26

Fed. R. Civ. P. ("Rule") 56 on a host of grounds that its counsel

sets out at page 1 of its motion:

> Specifically, Lilly is entitled to summary judgment
> because (1) plaintiffs cannot prove that she was
> exposed to DES in utero; (2) plaintiffs cannot identify
> Lilly as the manufacturer of the DES to which plaintiff
> was allegedly exposed, as required under applicable
> Illinois law; (3) plaintiffs' claims are time-barred;
> (4) plaintiff cannot prove causation; (5) plaintiffs'
> strict liability claims are time-barred by the Illinois
> statute of repose; and (6) plaintiff James Albers
> cannot maintain a claim for loss of consortium because
> he was not married to plaintiff at the time of her
> alleged injury.

In turn, Albers' counsel have begun their responsive legal

memorandum in this fashion (Albers Mem. 1):

> Without confidence in any single one of their
> arguments, Defendant proposes four different ones for
> depriving Ms. Albers of her day in Court, hoping that
> one will find its mark. Ms. Albers will thwart each
> seriatim.[2]

Although Lilly's reply memorandum is not yet due, the head-on

confrontation to this point permits its Rule 56 motion to be

dealt with now.

---

[2] [Footnote by this Court]  It is of course simply wrong to
say that if a party's lawyer believes that the client has
multiple grounds for relief, the advancement of those several
grounds somehow reflects a lack of confidence in any one of them.
Albers' counsel gains nothing by advancing such patently
incorrect advocacy--indeed, lawyers often fail to recognize that
urging a frivolous position can taint otherwise colorable
arguments by creating questions as to counsel's credibility.
This Court will not, however, visit any such consequence on
Albers or their counsel.  As for the disparity between Lilly's
enumeration of six arguments and Albers' reference to just "four
different ones," this opinion will briefly refer to that subject
later.

As it develops, Albers' extensive submission has identified enough in the way of material (that is, potentially outcome-determinative) facts to cause the rejection of any early summary disposition based on issues (1), (2) and (4) listed by Lilly. But the third issue--the time-bar question--requires substantial discussion and analysis.

District of Columbia law, as exemplified in <u>Bussineau v. President and Directors of Georgetown Coll.</u>, 518 A.2d 423 (D.C. App. 1986) and then reconfirmed per curiam in the lengthy opinion in <u>Diamond v. Davis</u>, 680 A.2d 364 (D.C. App. 1996), applies a "discovery rule" to determine when the statutory three-year limitations clock begins to tick--a modification of the usual rule that the accrual of a cause of action takes place when the plaintiff sustains injury. <u>Bussineau</u>, 518 A.2d at 425 stated the discovery rule requirements in this way:

> We hold that for a cause of action to accrue where the discovery rule is applicable, one must know (or by the exercise of reasonable diligence should know[)] (1) of the injury, (2) [of] its cause in fact and (3) of some evidence of wrongdoing.

<u>Diamond</u>, in which the same court was later called upon to decide whether different variants of those requirements were called for in different classes of cases (for example, where fraud and fraudulent concealment were involved), announced the universality of the criteria (680 A.2d at 381):

> In every case, the plaintiff has a duty to investigate matters affecting her affairs with reasonable diligence

3

under all the circumstances. Once the plaintiff
actually knows, or with the exercise of reasonable
diligence would have known of some injury, its cause-
in-fact, and some evidence of wrongdoing, then she is
bound to file her cause of action within the applicable
limitations period, measured from the date of her
acquisition of the actual or imputed knowledge.

There is no quarrel on Albers' part as to the satisfaction

of the first two components of the rule. To the contrary, as

Albers Mem. 10 acknowledges:

In 1991, Plaintiff Katherine Albers was diagnosed with
a T-shaped uterus and was told that this uterine
anomaly may have been related to her mother's ingestion
of DES when pregnant with her. Plaintiff does not
contest therefore that she knew more than three years
prior to filing suit that she was injured as a result
of her in utero DES exposure.

But Katherine disclaims any reason to suspect any wrongful

conduct in that respect (the necessary third component of the

rule), stating in part that she never read any newspaper article

or magazine or viewed or listened to any television or radio show

about DES (Katherine's April 3, 2003 affidavit, Albers App. 23).

That poses the question whether Katherine is completely

insulated from the application of the third element of the

discovery rule test by her asserted lack of information that

suggested any wrongdoing. In terms of the absence of any <u>actual</u>

knowledge on Katherine's part, this Court is required for Rule 56

purposes to take her word for it, even though it is almost

necessary for a person to have been marooned on a desert island

(or to belong to some variant of the genus Struthio, sharing the

4

ostrich's proverbial head-in-the-sand proclivities) to have been truly unaware of such an open and notorious fact as the many claims of wrongdoing that have been (and continue to be) publicly associated with DES.[3]

Those claims have manifested themselves in the filing of thousands of cases over the years, importantly including one that produced a highly publicized multimillion dollar jury verdict (over $42 million awarded to 11 woman plaintiffs) some three years after Katherine had learned of her problem in 1991,[4] as well as the clear indications of DES causation and of wrongdoing on the part of Lilly and other drug manufacturers that were invariably attached to those claims. Lilly has assembled at its summary judgment Mem. 13-15, and this Court has attached to this opinion, examples of the all-pervasive publicity as to DES, its problems and those of the drug manufacturers, including several highly publicized instances well after Katherine knew of her problem and had every reason to be alerted to any discussion of DES-related difficulties.

This Court has looked carefully at the operative caselaw in

---

[3] It is worth noting that Katherine is a college graduate, having obtained a bachelor's degree in business (including a course in business law) in 1977.

[4] Lilly refers to the coverage of that award in both the Chicago Tribune and the Chicago Sun Times at a time when the Albers were still living in Evanston, as well as to a Sun Times article during the same time frame cautioning women about DES-caused problems.

the District of Columbia, not only at <u>Bussineau</u> and <u>Diamond</u> but also at this year's decision in <u>Doe v. Medlantic Healthcare Group, Inc.</u>, 814 A.2d 939 (D.C. App. 2003).[5] <u>Doe, id</u>. at 945 does repeat the proposition that "when accrual actually occurred in a particular case is a question of fact for the factfinder." But it does so in the context that the fact-bound inquiry typically looks at situations in which there are disputed factual issues, such as whether a defendant engaged in misrepresentations (and the nature of such claimed misrepresentations), as well as the reasonableness of a plaintiff's reliance on defendant's conduct and misrepresentations (<u>id</u>.). And <u>Doe, id</u>. expressly recognizes that "summary judgment on the issue of when accrual occurred may be granted in cases when there is no disputed issue of fact" (cf. also <u>Jacobsen v. Oliver</u>, 201 F.Supp.2d 93, 109-11 (D. D.C. 2002)). As <u>Doe, id</u>. (emphasis added in part) has restated the test set out in <u>Bussineau</u> and <u>Diamond</u>:

> When the discovery rule applies, a cause of action accrues when the claimant knows or by the exercise of reasonable diligence should know of (1) the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.

---

[5] Albers' attorneys have cited to the decision in <u>Dawson v. Eli Lilly & Co.</u>, 543 F.Supp. 1330 (D. D.C. 1982), in which he was also counsel for plaintiffs (it is clear that counsel Aaron Levine has pretty much made a career out of lawsuits involving DES-occasioned claims). But Judge Joyce Hens Green's rejection of summary judgment on statute of limitations grounds in <u>Dawson</u> is two decades old, and the massive and highly publicized developments that have taken place in the field in the interim render that case's analysis of the due diligence issue very much out of date (to make a bad pun, time-barred?).

See <u>Bussineau v. President and Dirs. of Georgetown College</u>, 518 F.2d 423, 435 (D.C. 1986). "The law of limitations requires only that the plaintiff have <u>inquiry notice</u> of the existence of a cause of action." <u>Hendel v. World Plan Executive Council</u>, 705 A.2d 656, 661 (D.C. 1997). We have explained that a cause of action accrues for statute of limitations purposes when the plaintiff is deemed to be on inquiry notice, "because <u>if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs</u>, such an investigation, if conducted, would have led to actual notice." <u>Diamond v. Davis</u>, 680 A.2d 364, 372 (D.C. 1996)(per curiam). Thus, inquiry notice is "that notice which a plaintiff would have possessed <u>after</u> due investigation." <u>Id</u>. (emphasis added)

Reasonableness is of course a wholly objective standard, not a function of the idiosyncrasies of any particular individual. And in those objective terms, it must be concluded that it was unreasonable to do what Katherine did (or more accurately did not do) for years: She engaged in no follow-up inquiry at all into DES, into why it caused the serious deleterious effects that it did, into why in light of those effects it had still been prescribed and into whether there was anything untoward in all of this. Even the most modest of such inquiries (in lay, not professional, terms) would quickly have put Katherine onto information that clearly would have satisfied the third prong of the discovery rule as to actual (not simply imputed) knowledge and would have started the three-year limitations clock ticking.

Indeed, if any jury were to conclude otherwise, its determination would have to be overturned under Rule 50--and it is black letter law that the standards under Rule 50 and Rule 56

7

are identical (<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). And what has been said here comports fully with the properly understood District of Columbia caselaw.

Here this Court must treat it as undisputed for Rule 56 purposes--because it is required to accept Katherine's assertion notwithstanding any possible doubts on the subject--that she had no <u>actual</u> knowledge of possible fault associated with the DES ingested by her mother. But there is <u>also</u> no disputed issue of fact as to the matters adduced by Lilly. From the totality of those undisputed facts, this Court concludes that the exercise of reasonable diligence on Katherine's part required her to inquire long before 1999--which was fully <u>eight years</u> after she learned about her malformed uterus, about the fact that DES caused such a condition and about the tragic impact on her child-bearing ability--into matters that would unquestionably have afforded her <u>actual</u> knowledge of the third component of the discovery rule (as well as of the first two components) considerably more than three years before she filed suit. No more than a review of the quotations from <u>Davis</u> and the other cases referred to here is needed. And that being the case, Lilly's Rule 56 motion based on the untimeliness of this lawsuit is granted.

Just a few words should perhaps be said about the disparity, referred to in n.2, between Lilly's six asserted grounds for dismissal and Albers' having addressed just four grounds in their

response.   That response was in fact entirely silent (1) as to
the time-barring of Albers' strict liability claims under the
Illinois statute of repose and (2) as to James' inability to
maintain a claim for loss of consortium.   In the absence of
anything at all having been submitted on those subjects from
Albers' point of view, those facets of Lilly's motion are also
granted.

## Conclusion

There is no genuine issue of material fact as to the
untimeliness of this lawsuit in the sense taught by the District
of Columbia jurisprudence to which this Court must look on that
subject.   Lilly is therefore entitled to a judgment as a matter
of law.   Lilly's motion is granted on limitations grounds--and
because one strike suffices for this purpose, both Albers'
Complaint and this action are dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date:   April 15, 2003

alleged wrongdoing. First, the simple and reasonable step of reviewing publicly available sources, such as newspaper articles, would have shown allegations of wrongdoing. In particular, Chicago area newspapers frequently reported on DES and litigation involving DES. For example, on October 19, 1991, an article appeared in The Chicago Tribune reporting that a woman accepted a $4.25 million settlement in a case in which she claimed that DES caused her to be infertile. (*See* untitled October 19, 1991 Chicago Tribune article attached as **Exhibit N.**) Of note, this article was published just three weeks after plaintiff's HSG and just ten days after Dr. Miller wrote a letter, which plaintiff admitted she received, stating that plaintiff has a T-shaped uterus due to her DES exposure and is at risk for infertility. Additional examples of articles published in Chicago newspapers, attached as **Exhibit O,** include: *Woman wins in appeal of ruling over pregnancy drug,* The Chicago Tribune, October 10, 1985, at 17 (reporting appellate victory of a plaintiff alleging that DES had caused her to have pregnancy difficulties); *Drug firms settle lawsuits over DES,* The Chicago Tribune, November 1, 1985, at 3 (reporting settlement of allegations regarding reproductive dysfunction); *Having a baby: when is the time right in a woman's career?* The Chicago Tribune, November 2, 1986, at 8 (reporting that a "DES daughter" had pregnancy complications); *DES effects may pass to three generations,* The Chicago Tribune, June 9, 1987, at 10 (reporting allegations of link between DES exposure and reproductive problems); *Unexplained infertility distresses couples, challenges doctors,* The Chicago Tribune, July 26, 1987, at 14 (reporting that "DES, a drug once given to pregnant women to prevent miscarriages, is now believed to be the cause of infertility in many of their daughters"); *Suit seeks to extend liability laws,* The Chicago Tribune, September 18, 1989, at 1 (regarding DES case before Illinois Supreme Court); *DES blamed for death of teenager,* The Chicago Tribune, March 12, 1990, at 3 (reporting that the U.S. Supreme Court refused to hear

13

appeals from Lilly and other DES manufacturers in New York market share cases); *Women get $42 million in DES drug case*, Chicago Sun-Times, January 9, 1994, at 23 (reporting jury verdict of $42.3 million for 11 women, eight of whom alleged reproductive problems caused by DES exposure); *$42 million awarded in drug lawsuit*, The Chicago Tribune, January 9, 1994, at 16 (same); and *History repeats itself . . . so know your medical background*, Chicago Sun-Times, August 21, 1994, at 51 (cautioning women exposed to DES that they may have infertility problems). Similarly, by 1981, popular literature reported that "[c]urrently, there are more than 1,000 DES cases as of this writing pending in <u>nearly every state in the country</u> in various stages of litigation." Orenberg, Cynthia L., *DES: The Complete Story* (New York: St. Martin's Press, 1981) at pp. 137, 143.

Beginning in the early 1970s, popular magazines reported extensively regarding DES and injuries allegedly sustained by women exposed to DES *in utero*, including such publications as *Time, Ladies Home Journal, Good Housekeeping, Vogue, Glamour, Newsweek, Mademoiselle, Ms., Family Circle, Harper's Bazaar, Redbook,* and *McCall's. (See* Affidavit of David W. Brooks, attached as **Exhibit P** to Lilly's Statement of Undisputed Material Facts, at ¶ 4.) Beginning in the late 1970s continuing through the time that plaintiff believed she was infertile due to her alleged DES exposure, popular magazines reported regarding allegations that DES causes reproductive tract malformations, pregnancy difficulties and <u>infertility</u>, including *Reader's Digest, Parade, McCalls, Good Housekeeping, Cosmopolitan, Newsweek, Woman's Day, People Magazine,* and *Ms. (Id.* at ¶ 4.)

Television has also featured numerous news reports and other broadcasts regarding DES, injuries allegedly caused by DES and <u>litigation involving DES</u>. Such programs include *The ABC Evening News, The CBS Evening News, The NBC Evening News, Good*

14

*Morning America, The Today Show, CNN Special Report,* and *The MacNeil/Lehrer Newshour.*
(Exhibit N at ¶ 5.) Several local television broadcasts were also run in Chicago regarding DES,
including March 13, 1979 reports on WBBM and WMAQ regarding the *Needham* DES case,
and an October 30, 1983 report on WTTW. (*Id.* at ¶ 5.) Likewise, numerous radio broadcasts
were run regarding DES, injuries allegedly caused by DES and litigation involving DES,
including a six-part radio broadcast on WIND in Chicago. (*Id.*)

        Second, an investigation into publicly available court documents and reported
court opinions would have revealed that other plaintiffs had filed lawsuits related to their DES
exposure. Specifically, plaintiff would have discovered that litigation regarding injuries
allegedly sustained as a result of *in utero* exposure to DES has been ongoing in Illinois since at
least the mid-1970s. *See, e.g., Mink v. University of Chicago,* 460 F. Supp. 713 (N.D. Ill. 1978);
*Morrissy v. Eli Lilly and Company,* 394 N.E.2d 1369 (Ill App. Ct. 1979) (opinion does not
indicate when claim was filed, but refers to November 1976 order denying class certification).
Numerous Illinois state and federal court decisions and opinions regarding DES litigation have
been published. *See, e.g., Needham v. White Labs., Inc.,* 639 F.2d 394 (7th Cir. 1981); *Wetherill
v. University of Chicago,* 570 F. Supp. 1124 (N.D. Ill. 1983) *McMahon v. Eli Lilly and
Company,* 774 F.2d 830 (7th Cir. 1985); *Smith v. Eli Lilly and Company* 560 N.E.2d 324
(Ill. 1990); *Sparapany v. Rexall Corp.,* 618 N.E.2d 1098 (Ill App. Ct. 1993); *Zimmerman v.
Abbott Labs., Inc.,* 545 N.E.2d 547 (Ill. App. Ct. 1989); and *Millar-Mintz v. Abbott Labs.,*
645 N.E.2d 278 (Ill. App. Ct. 1994). The Illinois Supreme Court observed in 1990 that
"[b]eginning in the 1970s, hundreds of lawsuits were filed against manufacturers of DES by
daughters of women who took the drug while pregnant." *Smith v. Eli Lilly and Company,*
560 N.E.2d at 328.

1210615v1